Robert R. Ahdoot (CSB 172098)
*rahdoot@ahdootwolfson.com*
Theodore W. Maya (CSB 223242)
*tmaya@ahdootwolfson.com*
Bradley K. King (CSB 274399)
*bking@ahdootwolfson.com*
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: (310) 474-9111; Fax (310) 474-8585

*Counsel for Plaintiff and the putative class*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY WISDOM, individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>EASTON BASEBALL / SOFTBALL, INC., a Delaware corporation,<br>EASTON DIAMOND SPORTS, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 2:18-cv-4078<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES & INJUNCTIVE RELIEF**<br><br>1. **Unfair Business Practices in Violation of California Business & Professions § 17200, *et seq.***<br>2. **False Advertising in Violation of California Business and Professions § 17500, *et seq.***<br>3. **Breach of Express Warranty**<br>4. **Breach of Implied Warranty**<br>5. **Unjust Enrichment**<br><br>DEMAND FOR JURY TRIAL |

CLASS ACTION COMPLAINT                    1

# CLASS ACTION COMPLAINT

Plaintiff, Ricky Wisdom, brings this Class Action Complaint against Defendants, Easton Baseball/Softball, Inc. and Easton Diamond Sports, LLC (collectively, "Easton"), to stop Defendants' distribution and sale of baseball bats that are falsely advertised and mislabeled and to seek redress for all those who have been harmed by Defendants' misconduct. Plaintiff alleges as follows based on personal knowledge as to himself and his own acts and experiences, and as to all other matters, on information and belief, including an investigation by his attorneys.

## NATURE OF THE CASE

1. Easton is one of the largest manufacturers and sellers of sporting goods and equipment in the country, including several popular models of high-end youth baseball bats sold under various Easton brands.

2. Each baseball bat that Easton manufactures, distributes, and sells is labeled and advertised as being a specific and exact length in inches and weight in ounces.

3. However, Easton uses poor quality control measures in the manufacture of its bats, and as a result many models of Easton youth baseball bats that it sells actually weigh substantially more than labeled and advertised.

4. The size and weight of a bat are critical to a purchaser's decision about whether to purchase a given bat. Even a small difference of one ounce or less is significant for youth bats, because the bat weight affects a player's performance, such as swing speed, ease of swing, batting stance, as well as the velocity of the ball when hit. Moreover, a player who inadvertently plays or practices with a bat that is too heavy for him or her is at a greater risk of sports injuries to himself or herself, as well as to other players.

5. Plaintiff brings this action on his own behalf and on behalf of similarly situated consumers to obtain redress for those who purchased Easton baseball bats that were falsely labeled and advertised as being lighter than they actually are.  On

his own behalf and on behalf of a proposed class defined below, Plaintiff seeks an injunction prohibiting Defendants from selling falsely labeled and advertised youth baseball bats as described herein, and an award of actual damages to the members of the class, together with costs and reasonable attorneys' fees.

**JURISDICTION AND VENUE**

6.  This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) *et seq.*, because this case is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are greater than 100 putative class members; at least one putative class member is a citizen of a state other than Defendants' states of citizenship; and none of the exceptions under subsection 1332(d) apply to the instant action.

7.  This Court may assert general personal jurisdiction over Defendants, because Defendants are headquartered in California, and because Defendants are registered to do business in California.

8.  Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants reside in this District.

**PARTIES**

9.  Plaintiff, Ricky Wisdom, is a natural person and a resident of the State of Alabama.

10. Defendant Easton Baseball / Softball, Inc. is a Delaware corporation headquartered in Thousand Oaks, California and registered to do business in California. Easton's Thousand Oaks headquarters include its executive offices.

11. Defendant Easton Diamond Sports, LLC is a Delaware limited liability company headquartered in Van Nuys, California and registered to do business in California.

12. Easton manufactures, advertises, and sells sporting goods equipment, including the youth baseball bats at issue in this suit, online and through retail stores

CLASS ACTION COMPLAINT          3

located in Alabama, California, and elsewhere throughout the country.

13. During the period relevant to this lawsuit, Easton controlled the manufacture, design, testing, packaging, labeling, assembly, marketing, advertising, promotion, distribution, and selling of Easton bats—including quality control measures regarding the bats' weight and how the bats' weight is displayed on labeling and in advertising—from its headquarters located in Thousand Oaks, California.

14. The deceptive and unfair practices alleged herein originated from and were conceived, reviewed, approved and otherwise controlled from Easton's headquarters and executive offices in Thousand Oaks, California.

## COMMON ALLEGATIONS OF FACT

### *Background*

15. Easton is one of the largest manufacturers of sporting goods equipment in the country.

16. Some of Easton's most common and popular sports products are youth baseball bats. Easton manufactures, sells, and distributes a number of different types of baseball bats under various Easton brands.

17. Easton's bats are some of the most high-end, premium youth baseball bats on the market, with the more expensive models retailing for over three hundred and fifty dollars each ($350.00). Among baseball players, "Easton" baseball bats are widely known as an upscale baseball bat that sells for a premium price.

18. Many of Easton's customers who buy its baseball bats are parents of school age children in middle school and high school who play competitively for various local and national youth baseball leagues.

19. All of Easton's bats are labeled and advertised with the exact dimensions of the bats' diameter, length, and weight. The diameter and length are displayed in inches, and the weight is displayed in ounces in terms of the "weight drop."

20. A bat's weight drop is the difference between the length of the bat in inches and the weight of the bat in ounces. For instance, a 32-inch bat that weighs 22-ounces would be referred to as a -10, or "drop 10" bat.

21. Defendants' bats are sold both online and in retail stores. Regardless of whether they are sold online or in stores, however, the bats are separately displayed according to their size, length, and weight so that consumers can choose which bat to purchase based on the bat's specific dimensions and weight.

22. Easton's customers rely on Easton's representations regarding the length and weight of its baseball bats in order to purchase bats of the appropriate size and weight for their children.

23. A bat's size and weight are critically important to consumers when selecting a bat to purchase. Indeed, because Easton advertises and markets bats its bats as premium, high-end bats, Easton's customers are generally more discerning purchasers who care very strongly about selecting a bat with the correct specifications in order to optimize performance in competitive play.

24. Even a small difference in weight of 1oz or less is significant and material to the young boys and girls who play and compete with Easton bats. A bat's weight affects a number of important performance factors, such as how easy it is for a player to control the bat when swinging it across the plate, the speed and power of the swing, and the player's batting stance.

25. In addition to performance issues, a bat that is too heavy can also be a safety hazard. Young players who inadvertently play with a bat that is too heavy will fatigue faster, wear out their arms and shoulders, and suffer a heightened risk of sports injuries.

26. Moreover, bats that are too heavy pose a risk to others as well. Little-league baseball fields are smaller than ordinary baseball fields, and a ball hit with too much force will cause greater injury in the event it strikes a spectator or player in the outfield.

**_Defendants Sell Mislabeled, Overweight Bats_**

27.   Unbeknownst to many of the consumers who have purchased Easton's baseball bats, certain bats that Easton has sold actually weigh significantly more than their labeled and advertised weight.

28.   For example, Bat Digest, an independent organization that reviews and writes about baseball bats, conducted a study in 2017 that compared Easton's bats' actual weight to their stated weight. As part of this study, Bat Digest concluded that "there is considerable difference between the stated weight, actual weight and the swing weight of the bat."[1]

29.   The Bat Digest study evaluated several models of Easton bats in a variety of lengths and weights, and found that the bats were consistently between .5 and 2 ounces overweight in relation to their labeled and advertised weight. As explained above, these weight differences are significant and material.

| Year | Easton Bat | League | Stated Length | Stated Weight | Actual Weight | Difference |
|---|---|---|---|---|---|---|
| 2018 | Beast X 2 3/4 | USSSA | 31 | 21 | 21.9 | +0.9 |
| 2018 | Beast X Loaded | BBCOR | 33 | 30 | 31.4 | +1.4 |
| 2018 | Beast X Speed | BBCOR | 32 | 29 | 30.7 | +1.7 |
| 2018 | Beast X Speed | BBCOR | 33 | 30 | 31.2 | +1.2 |
| 2018 | Ghost X | USSSA | 32 | 22 | 22.75 | +0.75 |

---

[1]   https://www.justbatreviews.com/bat-lab/bat-actual-weight-vs-bat-stated-weight/ (last visited Apr. 17, 2018).

CLASS ACTION COMPLAINT          6

| Year | Model | Standard | Length | Listed Weight | Actual Weight | Difference |
|---|---|---|---|---|---|---|
| 2018 | Ghost X | USABat | 31 | 21 | 21.5 | +0.5 |
| 2018 | Ghost X | BBCOR | 33 | 30 | 30.9 | +0.9 |
| 2018 | Ghost X | BBCOR | 32 | 29 | 29.75 | +0.75 |
| 2018 | Ghost X 2 3/4 | USSSA | 31 | 21 | 22.2 | +1.2 |
| 2018 | Ghost X Hybrid | USABat | 31 | 21 | 22.4 | +1.4 |
| 2018 | Ghost X Hyperlite | USABat | 31 | 20 | 19.8 | -0.2 |
| 2018 | Magnum | USABat | 29 | 19 | 21 | +2 |
| 2017 | MAKO Beast | BBCOR | 32 | 29 | 30.25 | +1.25 |
| 2017 | Z-Core Lock & Load | BBCOR | 33 | 30 | 30.7 | +0.7 |

30. Easton has yet to provide full relief for consumers who purchased overweight bats. Generally, once the packaging and plastic covering is torn off of a new bat, Easton will not replace or refund the purchase price of the bat absent a showing of some obvious manufacturer's defect.

31. Easton has received significant profits from its false marketing and sale of the baseball bats purchased by Plaintiff and other consumers.

**Facts Specific to Plaintiff**

32. Plaintiff's minor son plays youth baseball in Alabama.

33. During the applicable limitations period, Plaintiff purchased an Easton

CLASS ACTION COMPLAINT 7

1  S750C (-10) 2 5/8" barrel bat from a sporting goods store in Florence Alabama. The baseball bat model that Plaintiff purchased is depicted below:



34. The bat that Plaintiff purchased prominently featured a label representing the bat's purported weight as 22 ounces when it in fact did not weigh that amount. The label as it appears on the bat that Plaintiff Wisdom purchased is depicted below:

35. Easton misrepresented to Plaintiff that the Easton S750C (-10) 2 5/8" barrel bat weighed 22 ounces through, among other things, the label on the bat, and intended that Plaintiff rely on that representation in making his purchase. Plaintiff did in fact rely on Easton's representations.

36. In actuality, however, the bat Plaintiff purchased is not 22oz as advertised. Plaintiff's bat is approximately 3oz heavier, making it closer to a drop 7 (-7) instead of a drop 10 (-10).

37. As a result, Plaintiff's son cannot use the bat he purchased for training or play in baseball leagues and tournaments as intended.

CLASS ACTION COMPLAINT 8

38. Plaintiff is not alone in his experiences, and many of Easton's other customers throughout the country have had nearly identical experiences.

39. Indeed, Easton's practice of selling and distributing mislabeled, falsely advertised bats is widespread and well documented, as seen from just a few examples of the many consumer complaints about this practice that have been publicly posted online:

- **Easton bats are heavy**

  Have you ever noticed your kids [sic] bat from Easton is a little heavy? Well, you are correct. Easton sends out bats that do not match the stickered weight, especially in youth bats. People buy a bat expecting a 28/17oz and get home and weigh the bat and it is 28/19.3oz….whooooa, 1.3oz heavier? Correct, almost 1 1/2oz heavier than stickered. The weight differential varies but in a lot of cases it is near 2oz; which is a little crazy.[2]

- The most consistent complaint that I've heard revolves around the weight. While it's great that this [Easton] bat comes in a variety of lengths and weights, the weight isn't consistently accurate or evenly distributed.

  When weight [sic] the bat, I've seen a difference as high as about 2 1/2 oz. That's a pretty significant weight difference. . . .

  Many players and coaches have an expectation of what a -10 drop can do. However, adding the 2.5 oz makes this a -7.5 drop which is significantly different.[3]

## CLASS ACTION ALLEGATIONS

40. Plaintiff brings this action on behalf of himself and a nationwide class (the "Class") defined as follows:

The Class: all persons in the United States who, during the applicable limitations period, purchased any model(s) of Easton baseball bats that were

---

[2] http://www.bigdawgbatrolling.com/easton-bats-are-heavy.htm (last visited May 14, 2018).
[3] https://batandballgame.com/best-easton-baseball-bats-review/ (last visited May 14, 2018).

1  misrepresented or falsely labeled as being lighter than they actually were.

2  41.  Excluded from the Class are any members of the judiciary assigned to preside over this matter; any Easton officer, director, or employee; and any immediate family members of such officers, directors, or employees.

42.  Upon information and belief, there are hundreds, if not thousands, of members of the Class such that joinder of all members is impracticable.

43.  Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

44.  Plaintiff's claims are typical of the claims of the Class members, because the factual and legal bases of Defendants' liability to Plaintiff and to the other members of the Class are the same, resulting in injury to the Plaintiff and to all of the other members of the Class as a result of Defendants' false advertisement of the baseball bats at issue.

45.  Numerous common questions of law and fact exist as to all members of the Class, and such questions predominate over questions affecting Plaintiff or individual members of the Class. Common questions for the Class include, but are not limited, to the following:

(a)  Whether Easton falsely advertised, represented, and/or warranted that its baseball bats weighed a certain amount;

(b)  Whether Easton's advertising of its baseball bats is false, deceptive, or misleading;

(c)  Whether Easton's conduct violated California Business and Professions Code Section 17200;

(d)  Whether Easton's conduct violated California Business and Professions

Code Section 17500;

(e) Whether Easton's representation of material facts with respect to the weight of its baseball bats caused Plaintiff and other members of the Class ascertainable monetary losses;

(f) Whether Plaintiff and the other members of the Class are entitled to monetary, restitutionary, or other remedies, and, if so, the nature of such remedies; and

(g) Whether Defendants should be enjoined from engaging in such conduct in the future.

46. Defendants have acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class in misrepresenting the baseball bats at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

47. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

**COUNT I**
**Violation of the California Business and Professions Code: False Advertising (Cal. Bus. & Prof. Code § 17500) on behalf of Plaintiff and the other members of the Class**

48. Plaintiff hereby incorporates the foregoing allegations by reference as though fully set forth herein.

49. Section 17500 of the California Business and Professions Code generally prohibits untrue or misleading advertising.

50. Section 17500 provides, in relevant part, that:

> It is unlawful for any person . . . to make or disseminate or cause to be made or disseminate before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state . . . any statement, concerning [] real or personal property or [] services, professional or otherwise, . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . .

51. Defendants' practice of advertising and labeling certain Easton baseball bats with weights that are materially less than their actual weights constitutes a deceptive, untrue, and misleading advertising practice because it gives the false impression that the bats are lighter than they actually are, causing harm to those who purchased them believing that the bats weigh the amount stated on the label.

52. Defendants, as the manufacturer and distributor of Easton bats, knew or should have known that their representations concerning the weights of Easton baseball bats were untrue and misleading.

53. Plaintiff and the other Class members relied on Defendants' misrepresentations and believed they were purchasing bats weighing the amount displayed on their respective bats' labels.

54. The weight of Defendants' bats is material to purchasers thereof. Because Defendants advertise and market Easton bats as premium, high-end bats costing in excess of $350, Defendants' customers are generally more discerning purchasers who care very strongly about selecting a bat with the correct specifications in order to optimize performance in competitive play. Had Plaintiff and the other Class members known that the bats they were buying actually weighed significantly more than the amount stated on the label, they would not have made their respective purchases.

55. Through false advertising and mislabeled products, Defendants have created and continue to create the likelihood that members of the public will be deceived as to the correct weight of the bats they purchase, since reasonable

consumers will rely on Defendants' product labeling as to the weight of the bat they are buying.

56. As a direct and proximate result of Defendants' unlawful and false advertising practices as set forth above, Plaintiff and the other Class members have suffered actual damages and Defendants have been unjustly enriched through proceeds from the sale of falsely advertised bats.

## COUNT II
**Violation of the California Business and Professions Code: Unfair Business Practices (Cal. Bus. & Prof. Code § 17200 *et seq.*) on behalf of Plaintiff and the other members of the Class**

57. Plaintiff incorporates by reference all of the foregoing allegations as if fully set forth herein.

58. California's Unfair Competition Law ("UCL") defines unfair competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

59. Section 17200 of the UCL applies to all Class members' claims, because Defendants' poor quality control measures and decisions as to the bats' marketing and labeling occurred within and emanated from the State of California.

60. Defendants have engaged in "unlawful" conduct in violation of the UCL, because Defendants' bats are falsely and misleadingly advertised as being substantially lighter than they actually are in violation of Cal. Bus. & Prof. Code § 17500 as described above.

61. Further, Defendants' conduct is "unfair" in violation of the UCL, because Defendants' practice of selling mislabeled products is immoral, unethical, oppressive, unscrupulous, and substantially injurious to customers, such that the gravity of the harm to Plaintiff and the other members of the Class outweighs any utility of Defendants' conduct. Defendants have caused substantial injury to consumers through the sale of mislabeled products. This harm is not outweighed by any countervailing benefits to those who purchased Defendants' mislabeled bats.

62. Finally, Defendants have also committed "fraudulent" acts under the UCL, because Defendants' falsely labeled bats are likely to deceive members of the public who reasonably rely on the labels and stated weights when deciding to purchase a given bat. Indeed, Plaintiff and the other Class members purchased Defendants' bats believing that their actual weight was the amount stated on the bats' labeling and advertising.

63. As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent practices described above, Plaintiff and the other Class members have suffered actual damages and Defendants have been unjustly enriched through proceeds from the sale of mislabeled bats.

## COUNT III
### Breach of Express Warranty
**(on behalf of Plaintiff and the other members of the Class)**

64. Plaintiff hereby incorporates the foregoing allegations by reference as though fully set forth herein.

65. Through product labeling and advertising, Defendants created written express warranties and expressly warranted to Plaintiff and the other members of the Class as to the specific weight of the bats.

66. Specifically, Defendants stamped each affected bat with a label expressly warranting that the bat weighed a certain amount in ounces. As such, Defendants uniformly made an express warranty to Plaintiff and the other Class members, warranting that Easton bats weighed a specific amount in ounces.

67. Prior to making their respective purchases, Plaintiff and the other Class members sought out and relied on Defendants' express warranty that Easton bats weighed a specific amount, appropriate for the person who would be using the bat. Thus, the weight representations made by Defendants formed a part of the basis of the bargain.

68. Because Defendants' weight markings were stamped on Easton bats

and communicated from Defendants directly to bat purchasers prior to their respective purchases, Defendants dealt directly with Plaintiff and the other Class members and formed a direct relationship with them.

69. Defendants breached their express warranties to Plaintiff and the other Class members because, as explained above, Defendants' bats are substantially heavier than labeled.

70. As a direct and proximate result of Defendants' breach of their express warranties, Plaintiff and the members of the Class have suffered actual damages in an amount to be determined at trial

## COUNT IV
### Breach of Implied Warranty
**(on behalf of Plaintiff and the other members of the Class)**

71. Plaintiff hereby incorporates the foregoing allegations by reference as though fully set forth herein.

72. The implied warranty of merchantability requires that goods be fit for the ordinary purposes for which goods of that type are used; have adequate labeling; and conform to any promises or affirmations made on any product label.

73. Defendants, as the marketers and distributors of the Easton baseball bats purchased by Plaintiff and the other members of the Class, are merchants.

74. Plaintiff and the other Class members purchased Defendants' baseball bats in a consumer transaction.

75. The overweight baseball bats that Defendants sold were not fit for the ordinary purposes for which they were sold, and they did not conform to the expectations of consumers. Individuals who purchased Defendants' overweight bats cannot use them for training, practice, or in games, because the additional weight interferes with performance and increases the risk of sports injuries.

76. Defendants' implied warranties extend to Plaintiff and the other Class members because Defendants knew the purposes for which Plaintiff and the other

Class members purchased the bats at issue, and Defendants manufactured the bats specifically for those purposes. Specifically, Defendants knew that Easton bats would be purchased or used by baseball players who made their selections based on the advertised length and weight of the bats.

77. Plaintiff and the other Class members did not receive the baseball bats that were warranted to them, because the baseball bats they purchased did not conform to the weight representations promised by the defendant.

78. As a direct and proximate result of Defendants' breach of their implied warranties, Plaintiff and the other Class members suffered actual monetary damages in an amount to be determined at trial.

## COUNT V
## Unjust Enrichment
**(in the alternative and on behalf of Plaintiff and the other Class members)**

79. Plaintiff hereby incorporates the allegations in paragraphs 1 – 63 by reference as though fully set forth herein.

80. Plaintiff and the other Class members conferred a benefit on Defendants by purchasing the non-conforming baseball bats. This benefit is measurable using the price of Defendants' bats and the premium built into the cost of Defendants' bats to consumers. Defendants appreciate or have knowledge of such benefit.

81. Defendants' retention of this benefit violates principles of justice, equity, and good conscience.

82. It would be inequitable and unjust for Defendants to retain the benefit of revenues obtained from purchases of non-conforming baseball bats by Plaintiff and the other Class members, because Defendants materially misrepresented the weights of the baseball bats such that the baseball bats were no longer age and strength appropriate.

83. Accordingly, because Defendants will be unjustly enriched if allowed

to retain such funds, Defendants must pay restitution to Plaintiff and the other Class members in the amount by which Defendants were unjustly enriched through sales of non-conforming baseball bats.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully prays for the following relief:

A. An order certifying the Class as defined above;

B. An award of the actual or compensatory damages to Plaintiff and the other members of the Class or, in the alternative, restitution and disgorgement of all funds unjustly retained by Defendants as a result of their unfair and deceptive advertising and sales practices;

C. An injunction requiring Defendants to cease all mislabeling and misrepresentations as to Easton bats' weight;

D. An award of reasonable attorneys' fees and costs; and

E. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

DATED: May 16, 2018

Respectfully submitted,

By: /s/ Robert R. Ahdoot
Robert R. Ahdoot
*rahdoot@ahdootwolfson.com*
Theodore W. Maya
*tmaya@ahdootwolfson.com*
Bradley K. King
*bking@ahdootwolfson.com*
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, California 90024
Phn: (310) 474-9111
Fax: (310) 474-8585

*Counsel for Plaintiff*